IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Kris Sarayn Kollyns, aka Kristopher S. Kollins, aka John WayneTodd, aka Johnnie W. Todd, ) ) ) ) | |
| Plaintiff, ) ) | Civil Action No. 8:04-1599-CMC-BHH |
| vs. ) ) | **REPORT OF MAGISTRATE JUDGE** |
| George Gintoli; W. Russell Hughes; Brenda Young-Rice (in personal capacity); and South Carolina Department of Mental Health(for injunctive relief), ) ) ) ) ) ) ) | |
| Defendant. ) ) | |

The plaintiff, proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. This matter is before the court on the defendants' motion to dismiss the complaint.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

**PROCEDURAL HISTORY**

The record reveals that the plaintiff is currently in the custody of the South Carolina Department of Mental Health ("SCDMH") under the provisions of the South Carolina Sexually Violent Predator Act ("SVPA"), S.C. Code Ann. §44-48-10 through §44-48-170.[1] Under this statute, the SCDMH and the South Carolina Department of Corrections ("SCDC") have entered into an inter-agency agreement whereby the SVP residents are housed in a segregated location within the Broad River Correctional Institution. *See In re Luckabaugh*, 351 S.C. 122, 136, 568 S.E.2d 338, 345 (2002); S.C. Code Ann. §44-48-100 (Supp. 2004).

---

[1] This act provides for the involuntary civil commitment to the custody of the SCDMH of sexually violent predators who are "mentally abnormal and extremely dangerous." S.C.Code Ann. §44-48-20 (Supp. 2004).

The plaintiff filed the *pro se* complaint in this action on May 21, 2004, seeking both actual damages and injunctive relief. The plaintiff alleges that the defendants have denied him access to the courts by refusing to provide enough paper, postage and envelopes to address the Court in appeals and briefs, by refusing him certified mail, by refusing to provide him with a notary public, by refusing to provide a law library, and by refusing to deliver legal mail more than three times a week.[2]

An action involving identical issues was filed in United States District Court on June 14, 2004 as a single action involving eleven plaintiffs. The plaintiff in the present action was not one of the original plaintiffs in that action. By order of United States District Judge Cameron Currie, filed June 18, 2004, the actions were separated and each plaintiff was assigned a separate civil action number. On June 28, 2004, the undersigned entered an order designating the case of *Kennedy v. Gintoli*, C.A. 8:04-1776-CMC-BHH, as the lead case in the cases which collectively are called the "Kennedy Legal Materials Cases."

By order dated November 8, 2004, Chief Judge Joseph F. Anderson, Jr. reassigned the instant case to Judge Currie and the undersigned United States Magistrate Judge. However, while the issues are virtually identical, the instant case was not formally consolidated with the *Kennedy* cases because on the date of Judge Anderson's order those cases were at a later stage procedurally than the instant case.

On April 14, 2005, the defendants filed a motion to dismiss the complaint. By order filed April 20, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition to the motion on May 4, 2005.

## APPLICABLE LAW

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no

---

[2]A *pro se* litigant's initial pleadings are to be accorded liberal construction and held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980). As such, the plaintiff's pleadings have been liberally construed.

2

set of facts which would support his claim and would entitle him to relief. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993) (citations omitted).

## **FACTUAL BACKGROUND AND ANALYSIS**

The plaintiff has alleged as follows (verbatim):

The plaintiff has an Appeal in state court, of his Order of Commitment to the SCDMH. The Clerk of Court for Richland County, South Carolina wrote the Plaintiff giving him just ten days to confirm that service had been made upon the S.C. Attorney General. This letter was delivered to the Plaintiff by the Defendant with only 24 hours to respond to the Clerk of Court. Because of mail not going out until a full 48 hours, he did not meet that deadline. This is a clear violation of the Supreme Court's ruling in Hudson v. Lack, 487 U.S. 266 (1988).

The Defendant has stated in writing to the Plaintiff, that it does not matter what legal briefs, etc. he needs to file, he may only have 27 pages of paper a month, and 4 envelopes a week. As well, these envelopes are not large enough to hold a full brief or appeal, with documents submitted with it. As the court knows, 27 pages are not enough for most briefs, let alone making copies for all those that must be served.

Even though there is a prison library that brings law books to the inmates of the SCDC, within the same building as the Plaintiff is held, the Defendants refuse the inmates under its control access to it. They provide a Paralegal to make copies of case law, as long as the law sought for is not harmful to the Defendant. The Plaintiff hold documents that show this Paralegal refusing to do any case research, or to make copies of required case law in the matter of this action. This is a clear violation of the Courts rulings of Gluth v. Kongas, 951 F.2d 1504, and Alvin Canell v. Re. Bradshaw, etal., 870 F.Supp. 1382.

Time and again the Plaintiff has both written and met with staff, seeking to have a Notary Public on hand so that sworn to documents can be sent to the courts. The last time this was done, a Mr. Gray met with the Plaintiff twice, during the week of May 1, 2004. After the first meeting, Mr. Gray went to the Defendants to try and work out the above complaints, which were out right refused. It was stated by the Defendants that the SVP

> unit does not fall under the above cited rulings, and therefore the services do not have to be granted.
>
> There is no grievance system set up at this time. There are grievance forms, but no system set up to answer them. All grounds in this case have been grieved by way of these forms, but since there is no grievance system in place, they can not be addressed. The best that the Plaintiff could do was meet with Mr. Gray, who agreed with the Plaintiff about the lack of services, and the need to have them in place, but can not cause it to take place over the objects of the Defendants.

(Comp. at 2).

Essentially, the plaintiff is complaining about lack of access to the courts, through a lack of access to the law library, inadequate legal assistance, and inadequate materials, such as paper and envelopes. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court held that in cases involving "original actions seeking new trials, release from confinement, or vindication of fundamental civil rights", states have an affirmative constitutional obligation "to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 827-28. The defendants argue that because the plaintiff is not a prisoner and is not incarcerated, he does not have a constitutional right of access to the courts. While *Bounds* and its progeny do not specifically address this issue, several courts have held that the right of access first found in *Bounds* does extend to those involuntarily committed to mental institutions. *See Johnson by Johnson v. Brelje*, 701 F.2d 1201 (7th Cir. 1980), *superceded by statute as to other grounds as stated in Maust v. Headley*, 959 F. F.2d 644 (7th Cir. 1992); *Ward v. Kort*, 762 F.2d 856 (10th Cir. 1985); *Murray v. Didario*, 762 F.Supp. 109 (E.D. Pa. 1991); *Hatch v. Yamauchi*, 809 F.Supp. 59 (E.D. Ark. 1992); *Henderson v. McDonald*, 857 F.Supp. 49 (N.D.Ill. 1994).

The plaintiff here has been adjudicated to be a sexually violent predator under the SVPA. The SVPA sets forth a civil, non-punitive statutory scheme. *See Luckabaugh*, 351 S.C. at 143, 568 S.E.2d at 348 (the South Carolina SVPA provides a civil commitment scheme

4

which both treats an individual's mental illness and protects the public from individuals with a propensity to commit acts of sexual violence). As such, "due process requires that the conditions and duration of confinement ... bear some reasonable relation to the purposes for which persons are committed." *Seling v. Young*, 531 U.S. 250, 265 (2001). It appears clear to this court that these individuals have at least as much right to access to the courts as convicted criminals still serving their sentences in prison.

The defendants argue that even if adjudicated sexually violent predators have a constitutional right of access to the courts, the plaintiff here has not demonstrated an actual injury as a result of the alleged denial of access. *See Lewis v. Casey*, 518 U.S. 343 (1996). On a motion to dismiss, however, this court must examine whether or not the plaintiff can prove any set of facts which would entitle him to relief. The plaintiff has clearly asserted an alleged injury, *i.e.*, he did not meet at least one deadline in a state court proceeding. In addition, the plaintiff alleges that the failure to provide a law library or adequate legal assistance, and the failure to provide a notary public and adequate materials has hindered his ability to proceed in various pending court actions. Moreover, it appears undisputed from the record that, in fact, no law library is provided to the plaintiff and other civilly adjudicated sexually violent predators in the custody of the Department of Mental Health and the Department of Corrections. While the question of whether or not the plaintiff suffered an injury in fact might be disputed, the complaint, on its face, states a cause of action for denial of access to the courts.

### *Qualified Immunity*

In addition to seeking injunctive relief from the South Carolina Department of Mental Health, the plaintiff seeks actual damages from the individual defendants for civil rights violations. The defendants argue that this action should be dismissed on the grounds of qualified immunity.

Qualified immunity shields government officials performing discretionary functions from liability for civil damages so long as the officials' conduct does not "violate clearly established [statutory or constitutional] rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This principle reflects the concern that civil damages awards against public officials for every judicially determined violation of constitutional rights would prove too expensive to the public, discourage public service employment, and impair governmental decision-making. *See id.* at 814. This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.* Thus, in ruling on a defense of qualified immunity, a court must (1) identify the specific right allegedly violated; (2) determine whether at the time of the alleged violation the right was clearly established; and (3) if so, determine whether a reasonable person in the official's position would have known that his action would violate the right. *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 286, 290 (1999); *see also Suarez v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).

As discussed above, the constitutional right which the plaintiff is asserting, *i.e.* the right of civilly adjudicated sexually violent predators to access the courts, was not clearly established at the time of the plaintiff's complaint. First of all, there has been no case directly on point in the Fourth Circuit, nor has the United States Supreme Court addressed this specific issue. The cases cited above, in support of this constitutional right, all were decided in different circuits and, indeed, most were in district courts. Moreover, none of these cases specifically dealt with the rights of individuals who had been found to be sexually violent

6

predators, as opposed to involuntarily committed patients in mental health facilities. The law clearly has not been settled in this area, and it is this court's opinion that the individual defendants here, at the time of the plaintiff's complaint, should not have been charged with knowledge of a right which clearly constitutes a "gray" area of the law. It appears, at the very least, that reasonably competent state officials, confronted with the issue as to whether or not sexually violent predators who are involuntarily confined through a civil proceeding have a right of access to the courts through a law library or other legal assistance, could have disagreed on the question.

For these reasons, it is recommended that the individual defendants are entitled to qualified immunity with respect to the damages claim against them. Accordingly, as to the individual defendants, it is recommended that the motion to dismiss be granted.

The plaintiff also seeks injunctive relief against the Department of Mental Health. Specifically, he seeks access to a law library, more regular delivery and pick-up of legal mail, the availability of a notary public and other materials such as paper and envelopes. Clearly, qualified immunity does not apply to claims for injunctive relief. Accordingly, as to the defendant South Carolina Department of Mental Health, the motion to dismiss should be denied.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, it is recommended that, as to the defendants Gintoli, Hughes and Young-Rice, the motion to dismiss be granted. It is further recommended that as to the defendant South Carolina Department of Mental Health, the motion to dismiss be denied.

s/ Bruce H. Hendricks
United States Magistrate Judge

December 7, 2005
Greenville, South Carolina

7

8