```
IN THE UNITED STATES DISTRICT COURT
  FOR THE DISTRICT OF SOUTH CAROLINA
           ANDERSON DIVISION
```

| | |
|---|---|
| Kris Sarayn Kollins, ) | C.A. No. 8:04-1599-CMC-BHH |
| ) | |
| Plaintiff, ) | |
| ) | **OPINION and ORDER**[1] |
| v. ) | |
| George Gintoli; Russell Hughes; ) | |
| Brenda Young-Rice, in their Personal ) | |
| Capacities; and South Carolina Department ) | |
| of Mental Health, for injunctive relief, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on Plaintiff's *pro se* complaint seeking relief pursuant to 42 U.S.C. § 1983. Plaintiff is currently in the custody of the South Carolina Department of Mental Health (DMH) under provisions of the South Carolina Sexually Violent Predator Act ("SVPA" or "the Act").[2] Plaintiff asserts Defendants violated 42 U.S.C. § 1983 by failing to provide him[3] access to a law library and through other actions and inactions which interfered with his constitutional right of access to the courts. Plaintiff seeks injunctive relief as well as compensatory and punitive damages. On April 14, 2005, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The individual Defendants also assert they are entitled to qualified immunity. Plaintiff responded to the motion to dismiss on May 4, 2005.

---

[1]This order contains the court's explanation of its reasoning for the Order entered in this matter on March 31, 2006.

[2]The SVPA allows the civil commitment of persons determined to the Sexually Violent Predators (SVPs) beyond the completion of their criminal sentence.

[3]Plaintiff indicates that he is a transsexual, and as such, refers to himself in the feminine. Because Plaintiff was convicted of a sexually violent offense and committed to the Department of Mental Health as a man, the court chooses to use the male pronoun to refer to Plaintiff.

**Procedural Background**

In accordance with the court's order of reference, 28 U.S.C. § 636(b), and Local Rule 73.02 (B)(2)(b) and (e), DSC, this matter was referred to United States Magistrate Judge Bruce H. Hendricks for pre-trial proceedings and a Report and Recommendation.[4] On December 7, 2005, the Magistrate Judge issued a Report recommending Defendants' Motion to Dismiss be granted as to the individual Defendants based upon qualified immunity. The Magistrate Judge also recommended the motion be denied as to Defendant DMH because Plaintiff had made a sufficient showing of injury to overcome Defendant DMH's motion to dismiss. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and Recommendation and the serious consequences if they failed to do so. Defendants filed no objections to the Report and Recommendation; Plaintiff filed objections to the Report on December 19, 2005.

**STANDARDS OF REVIEW**

**Review of Report and Recommendation.** The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report and Recommendation of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident*

---

[4]This case was originally assigned to The Honorable Joseph F. Anderson, Jr. By Order filed November 8, 2004, Judge Anderson directed this case be transferred to the undersigned for consolidation with several other cases.

*Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (internal quotation and citation omitted).

**Motion to Dismiss.** A complaint must not be dismissed for failure to state a claim "unless it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."[5] *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). "Moreover, when such a dismissal involves a civil rights complaint, '[a court] must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.'" *Veney v. Wyche,* 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir.1988)). *See also Slade v. Hampton Roads Regional Jail*, 407 F.3d 243, 248 (4th Cir. 2005) (same).

***Pro se* Petitions.** *Pro se* petitions are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), *cert. denied*, 439 U.S. 970 (1978), and a federal district court is charged with liberally construing a petition filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980);

---

[5]Because Defendants moved for dismissal after filing an answer, the 12(b)(6) motion is construed as "a Rule 12(c) motion for judgment on the pleadings raising the defense of failure to state a claim upon which relief can be granted." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (citation omitted). The standard of review for a 12(b)(6) and 12(c) motion are, however, the same. *Id*. at 243-44. *See also Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) ("A motion to dismiss under [Rule 12(c)] tests the sufficiency of a [claim], it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.").

3

*Cruz v. Beto*, 405 U.S. 319 (1972). However, the requirement of liberal construction does not mean that a court may ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dept. of Soc. Svcs.*, 901 F.2d 387 (4th Cir. 1990).

**ARGUMENTS OF THE PARTIES**

As noted above, Plaintiff's complaint and subsequent filings maintain Defendants' alleged failure to provide him access to a law library adversely affected the outcome of several state court actions.

Defendants argue that sexually violent predators (SVPs) do not have a constitutional right of access to a law library. Defendants further argue that, assuming individuals such as Plaintiff *do* have a right of access to the courts, Plaintiff has not provided any evidence of actual injury because he has provided only vague references to the dismissal of claims in the state courts, and because he is a "prolific litigant." Memorandum in Support of Motion to Dismiss at 4, filed Apr. 14, 2005.[6] Plaintiff responds to these contentions by arguing that several of his state court matters were dismissed due to his lack of access to a law library, his inability to get documents notarized, and his inability to have access to certified mail.

**DISCUSSION**

After reviewing the record of this matter, the applicable law, and the Report and Recommendation of the Magistrate Judge, the court adopts the ultimate conclusion of the Magistrate

---

[6]Defendants point to Plaintiff's status as a "prolific litigant" to support the argument that Plaintiff has adequate access to the courts. This court notes that most of Plaintiff's cases filed in this court were filed while Plaintiff was an inmate of the South Carolina Department of Corrections and would, therefore, have no bearing on Plaintiff's right of access to the courts while committed to the care and control of the Department of Mental Health as an SVP.

4

Judge's Report and Recommendation. The court determines that Plaintiff has alleged an actual injury relating to the dismissal of a state habeas corpus action sufficient to overcome Defendant DMH's motion to dismiss.

**Plaintiff's right of access.** This case presents questions arising at the intersection between the rights afforded those inmates either convicted of a criminal offense or awaiting trial on criminal charges, and the limited class of individuals involuntarily civilly committed to the custody of the DMH under the SVPA, S.C. Code Ann. §§ 44-48-10, *et seq*. The Act under which Plaintiff is committed was passed in 1998 in response to concerns that "a mentally abnormal and extremely dangerous group of sexually violent predators exists who require involuntary civil commitment in a secure facility for long-term control, care, and treatment." S.C. Code Ann. § 44-48-20. The Act, modeled after a similar Kansas act which passed constitutional muster in *Kansas v. Hendricks*, 521 U.S. 346 (1997), provides a procedure for South Carolina's retention and control of individuals reaching the end of a criminal sentence for conviction of a sexually violent offense.[7] During the course of these civil commitment proceedings, the Act provides for a jury trial, *see* S.C. Code. Ann. §44-48-90, a heightened standard of proof, *see* S.C. Code Ann. §44-48-100(A) ("[t]he court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator"), as well as various other procedural safeguards analogous to those available for criminal defendants.

There is some question whether Defendants' delineation of Plaintiff's rights as equivalent to those of a "mental patient" is an accurate characterization of the rights to which Plaintiff is

---

[7]This includes those individuals who are confined in the South Carolina Department of Corrections or the Department of Juvenile Justice, or, in some instances, under the supervision of the South Carolina Department of Probation, Parole and Pardon Services. *See* S.C. Code Ann. § 44-48-30(5).

entitled. This is, in part, because persons committed under the SVPA are excluded from the definition of mental health "patient." *See* S.C. Code Ann. § 44-22-10(11).

Due process and equal protection require that prisoners–both convicted and pre-trial detainees–have access to the courts to pursue direct criminal appeals, file habeas petitions, or to file civil rights actions "to vindicate 'basic constitutional rights.'" *Lewis v. Casey*, 518 U.S. 343, 354 (1996) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)).[8] Plaintiff's confinement status is neither that of a criminal inmate nor a pretrial detainee. Yet it can hardly be said Plaintiff has no right of access to the courts.

As the Ninth Circuit held in *Cornett v. Donovan*, "[t]he right of access helps ensure that the unlawfully detained obtain their freedom . . . and that the lawfully detained have recourse for violation of fundamental constitutional rights. . . . These concerns are adequately addressed only if the right of access is guaranteed to people institutionalized in a state mental hospital regardless of whether they are civilly committed after criminal proceedings or civilly committed on grounds of dangerousness." *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995).[9]

In *Bounds v. Smith*, 430 U.S. 817 (1978), the Supreme Court defined access to the courts for

---

[8] As noted by the Supreme Court, the right of access to the courts has been found to exist in many areas of the Constitution. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (noting that "[d]ecisions of this Court have grounded the right of access in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses") (internal citations omitted).

[9] Additionally, Plaintiff's circumstance is analogous enough to that of a criminal defendant to warrant parallel treatment regarding his right of access to the courts. Indeed, both Plaintiff and Defendants assume such, as they both argue the application–or not–of *Bounds v. Smith*, 430 U.S. 817 (1978), and *Casey*.

prisoners as "meaningful access." *Bounds*, 430 U.S. at 830. This was interpreted to require institutions to provide access to a law library or legal assistance in filing lawsuits. However, the *Casey* decision, issued in 1996, indicated that "*Bounds* established no such right . . . . The right that *Bounds* acknowledged was the (already well-established) right of *access to the courts*." *Lewis v. Casey*, 518 U.S at 350. The *Casey* decision distanced itself from the more expansive *Bounds* decision, finding that *Bounds* "appear[s] to suggest that the State must enable the prisoner to *discover* grievances, and to *litigate effectively* once in court. . . . These elaborations upon the right of access to the courts have no antecedent in our pre-*Bounds* cases, and we now disclaim them." *Casey*, 518 U.S. at 343. The *Casey* court went on:

> In other words, *Bounds* does not guarantee inmates the wherewithall to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id*. at 355. The "touchstone," according to *Casey*, is that inmates be afforded "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Id*. at 356.

As a fundamental tenet associated with our basic concepts of ordered liberty, an individual whose liberty is constrained against his will, whether he be a mental patient, a criminally-convicted inmate, a pre-trial detainee, or an individual civilly committed through an SVP act, has a constitutional right of access to the courts to challenge the fact or conditions of his confinement. The court, therefore, finds that Plaintiff is entitled, under the Constitution, to access to the courts

to challenge the fact or conditions of his confinement.

**Constitutional Injury.** While the court concludes that Plaintiff is entitled to a right to access, this is not the end of the inquiry. In this matter, Plaintiff must overcome the individual Defendants' motion to dismiss on grounds of qualified immunity, and Defendant DMH's motion to dismiss under Fed. R. Civ. P. 12(b)(6).

**Qualified Immunity.** The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), held that "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818. Thus, determining whether an official is entitled to qualified immunity requires that the court make a two-step inquiry "in proper sequence." *Parrish v. Cleveland*, 372 F.3d 294, 301-02 (4th Cir. 2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 200 (2001)). As a threshold matter, the court must determine whether, taken in the light most favorable to the plaintiff, the facts alleged show that the official's conduct violated a constitutional right. *Id*. If the facts, so viewed, do not establish a violation of a constitutional right, the inquiry ends, and the plaintiff cannot prevail. *Id*. If the facts do establish such a violation, however, the next step is to determine whether the right violated was clearly established at the time of the alleged offense. *Id*. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Id*. "If the right was not clearly established in the 'specific context of the case'–that is, if it was not 'clear to a reasonable officer' that the conduct in which he allegedly engaged 'was unlawful in the situation he confronted'–then the law affords immunity from suit." *Id*. (quoting *Saucier*, 533 U.S. at 201).

8

While this court has determined that Plaintiff, as a civilly-committed SVP, has a constitutional right of access to the courts to challenge the fact, or conditions, of confinement, the court concludes that whether this right requires access to a law library, as opposed to a paralegal to make copies of requested authorities or some other "reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts," *Bounds*, 430 U.S. at 825, was not clearly established at the time of the individual Defendants' purported actions. While the Supreme Court did address the right of access to the courts in *Bounds*, *Casey*, and their progeny, these decisions did not directly address the precise type of access to be afforded. *See Bounds*, 430 U.S. at 830-32 (access to a law library is "one constitutionally acceptable method to assure meaningful access to the courts," and "our decision . . . does not foreclose alternative means to achieve that goal. . . . [A] legal access program need not include any particular element we have discussed, and we encourage local experimentation. Any plan, however, must be evaluated as a whole to ascertain its compliance with constitutional standards."). Therefore, the court finds that the individual Defendants–Gintoli, Hughes, and Rice-Young–are entitled to qualified immunity.

**Defendant DMH's Motion to Dismiss.** As noted above, the court finds Plaintiff has asserted an actual injury which precludes Defendant DMH's dismissal from this case at this point. It appears from the information provided by Plaintiff, however, that only one of Plaintiff's complained-of state court matters was a case challenging the fact, or conditions, of his confinement. In "Plaintiff's Affidavit in Support of Complaint," he avers he filed a petition for writ of habeas corpus in Richland County Court, challenging the fact of his confinement. Plaintiff contends that this petition was dismissed "because I did not have access to the rules of the court, and did not correct the petition for relief when the knowledge that I had missed service upon someone came up."

9

Plaintiff's Affidavit in Support of Complaint at 2, filed May 4, 2005.[10]  The court makes no finding as to any merit of Plaintiff's underlying state court habeas corpus petition.  However, this alleged actual injury warrants further development of the record of this matter.

## CONCLUSION

Defendants' motion to dismiss is **granted in part and denied in part**.  The court dismisses all claims against the individual Defendants based upon qualified immunity.  However, Defendant DMH's motion to dismiss is **denied**.  This case is recommitted to the Magistrate Judge for further proceedings, including the entry of a scheduling order.

**IT IS SO ORDERED**.

                                                                                    s/ Cameron McGowan Currie
                                                                                    CAMERON MCGOWAN CURRIE
                                                                                    UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
April 4, 2006

---

[10]Plaintiff makes allegations relating to the status of several other cases.  However, two of these cases do not relate to the fact, or conditions, of his current confinement.  Plaintiff does not provide this court with sufficient information relating to the other purported actions for this court to know with any certainty whether Plaintiff may have suffered an actual injury as to these cases.  While one case, *Kollyns v. State*, Common Pleas Civil Action No. 03-CP-40-2103, appears to be have been dismissed for Plaintiff's failure to file a notarized affidavit of service, Plaintiff indicates that this matter was a "*pro se* state tort action . . . ."  Plaintiff's Verified Response at 3, filed Nov. 15, 2004.  This case, therefore, does not appear to be a "conditions of confinement" case.