IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | |
|---|---|
| Kris Sarayn Kollins, ) | C.A. No. 8:04-1599-CMC-BHH |
| ) | |
| Plaintiff, ) | |
| ) | **OPINION and ORDER** |
| v. ) | |
| South Carolina Department of Mental ) | |
| Health, for injunctive relief, ) | |
| ) | |
| Defendant.[1] ) | |
| _____) | |

This matter is before the court on Plaintiff's *pro se* complaint seeking relief pursuant to 42 U.S.C. § 1983. Plaintiff is currently in the custody of the South Carolina Department of Mental Health (DMH) under provisions of the South Carolina Sexually Violent Predator Act ("SVPA" or "the Act").[2] Plaintiff asserts Defendant violated his Due Process and Equal Protection rights by failing to provide him[3] access to a law library and through other actions and inactions which interfered with his constitutional right of access to the courts. Plaintiff seeks injunctive relief. On July 18, 2006, Defendants filed a motion for summary judgment. Plaintiff responded to the motion on August 22, 2006.

In accordance with the court's order of reference, 28 U.S.C. § 636(b), and Local Rule 73.02 (B)(2)(b) and (e), DSC, this matter was referred to United States Magistrate Judge Bruce H.

---

[1] Defendants George Gintoli, Russell Hughes, and Brenda Young-Rice were previously dismissed from this action based upon qualified immunity. *See* Opinion and Order (Dkt. # 52, filed Apr. 4, 2006).

[2] The SVPA allows the civil commitment of persons determined to the Sexually Violent Predators (SVPs) beyond the completion of their criminal sentence.

[3] Plaintiff indicates that he is a transsexual, and as such, refers to himself in the feminine. Because Plaintiff was convicted of a sexually violent offense and committed to the Department of Mental Health as a man, the court uses the male pronoun to refer to Plaintiff.

Hendricks for pre-trial proceedings and a Report and Recommendation.[4] On February 8, 2007, the Magistrate Judge issued a Report recommending Defendant's Motion for Summary Judgment be granted. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and Recommendation and the serious consequences if they failed to do so. Plaintiff filed objections to the Report on February 22, 2007.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report and Recommendation of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b).

After reviewing the record of this matter, the applicable law, the Report and Recommendation of the Magistrate Judge, and Plaintiff's Objections, the court adopts the Magistrate Judge's Report and Recommendation.

The Constitution requires that prisoners–both convicted and pre-trial detainees–have access to the courts to pursue direct criminal appeals, file habeas petitions, or to file civil rights actions "to vindicate 'basic constitutional rights.'" *Lewis v. Casey*, 518 U.S. 343, 354 (1996) (quoting *Wolff v.*

---

[4]This case was originally assigned to The Honorable Joseph F. Anderson, Jr. By Order filed November 8, 2004, Judge Anderson directed this case be transferred to the undersigned for consolidation with several other cases.

*McDonnell*, 418 U.S. 539, 579 (1974)).[5] Plaintiff's confinement status is neither that of a criminal inmate nor a pretrial detainee. Yet it can hardly be said Plaintiff has no right of access to the courts.

As the Ninth Circuit held in *Cornett v. Donovan*, "[t]he right of access helps ensure that the unlawfully detained obtain their freedom . . . and that the lawfully detained have recourse for violation of fundamental constitutional rights. . . . These concerns are adequately addressed only if the right of access is guaranteed to people institutionalized in a state mental hospital regardless of whether they are civilly committed after criminal proceedings or civilly committed on grounds of dangerousness." *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995).[6]

In *Bounds v. Smith*, 430 U.S. 817 (1978), the Supreme Court defined access to the courts for prisoners as "meaningful access." *Bounds*, 430 U.S. at 830. This was interpreted to require institutions to provide access to a law library or legal assistance in filing lawsuits. However, the *Casey* decision, issued in 1996, indicated that "*Bounds* established no such right . . . . The right that *Bounds* acknowledged was the (already well-established) right of *access to the courts*." *Lewis v. Casey*, 518 U.S at 350. The *Casey* decision distanced itself from the more expansive *Bounds* decision, finding that *Bounds* "appear[s] to suggest that the State must enable the prisoner to *discover* grievances, and to *litigate effectively* once in court. . . . These elaborations upon the right

---

[5]As noted by the Supreme Court, the right of access to the courts has been found to exist in many areas of the Constitution. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (noting that "[d]ecisions of this Court have grounded the right of access in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses") (internal citations omitted).

[6]Additionally, Plaintiff's circumstance is analogous enough to that of a criminal defendant to warrant parallel treatment regarding his right of access to the courts. Indeed, both Plaintiff and Defendants assume such, as they both argue the application–or not–of *Bounds v. Smith*, 430 U.S. 817 (1978), and *Casey*.

of access to the courts have no antecedent in our pre-*Bounds* cases, and we now disclaim them."

*Casey*, 518 U.S. at 343. The *Casey* court went on:

> In other words, *Bounds* does not guarantee inmates the wherewithall to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355. The "touchstone," according to *Casey*, is that inmates be afforded "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Id.* at 356.

 As a fundamental tenet associated with our basic concepts of ordered liberty, an individual whose liberty is constrained against his will, whether he be a mental patient, a criminally-convicted inmate, a pre-trial detainee, or an individual civilly committed through an SVP act, has a constitutional right of access to the courts to challenge the fact or conditions of his confinement. The court, therefore, found in its Order of April 4, 2006, that Plaintiff was entitled, under the Constitution, to access to the courts to challenge the fact or conditions of his confinement.

While the Supreme Court did address the right of access to the courts in *Bounds*, *Casey*, and their progeny, these decisions did not directly address the precise type of access to be afforded. *See Bounds*, 430 U.S. at 830-32 (access to a law library is "one constitutionally acceptable method to assure meaningful access to the courts," and "our decision . . . does not foreclose alternative means to achieve that goal. . . . [A] legal access program need not include any particular element we have discussed, and we encourage local experimentation. Any plan, however, must be evaluated as a

4

whole to ascertain its compliance with constitutional standards.").[7]

Plaintiff contends in this case that Defendant interfered with his right of access to the courts in failing, *inter alia*, to provide him access to copies of the rules of court and a notary public, and in failing to provide for him to serve legal documents via certified mail.

On March 18, 2004,[8] Plaintiff filed a petition for writ of habeas corpus, *Kollyns v. State of South Carolina*, South Carolina Court of Common Pleas No. 04-CP-40-1363. This state court case challenged the fact of his confinement under the Act.[9] Plaintiff contends that this petition was

---

[7]Defendant argues in its motion that "meaningful access to the courts is provided [to Plaintiff] by the assistance of counsel during a person's commitment hearing and at his annual hearing." Defendant's Memorandum in Support at 8 (Dkt. # 55-2, filed July 18, 2006). In additional support of its motion, Defendant has supplied the affidavit of Cathy Garner (Garner), a paralegal "who assists the residents with the acquisition of legal authorities." *Id*. Garner avers that "[t]o the best of my knowledge, I have received only one request from [Plaintiff], seeking information about an escape/attempt to escape charge in his record that he wanted removed." Aff. of Cathy Garner at 2 (Dkt. #55-3, filed July 18, 2006). While not relevant to the ultimate decision of this court, the court notes its concern regarding the above-noted argument and affidavit. Plaintiff's entitlement to the assistance of counsel to, every year, challenge the *fact* of his confinement does not operate to answer the question of whether Plaintiff is provided access to the courts to challenge a condition *of* his confinement.

As to the affidavit, Plaintiff has submitted exhibits which call into question the accuracy of Garner's affidavit. *See* Attachments to Plaintiff's "Motion for Protection" (Dkt. # 9, filed July 1, 2004) and Attachments to Plaintiff's "Verified Response to Defendants' Motion to Dismiss" (Dkt. #28, filed Nov. 15, 2004). It is clear from these submissions that Plaintiff has submitted to Garner more than "one request . . . seeking information about an escape/attempt to escape charge in [Plaintiff's] record that [Plaintiff] wanted removed." The court agrees with Defendant's position in its Reply (Dkt. # 59, filed Aug. 29, 2006) that Plaintiff's own exhibits tend to show that he has access to the courts, yet it is clear that Garner's affidavit about her interactions with Plaintiff is not accurate.

[8]The Petition is dated January 13, 2004. However, it was not filed by the Richland County Clerk of Court until March 18, 2004. There is no other information or evidence provided explaining the lapse of time between these two dates.

[9]Plaintiff made allegations in his complaint in this case relating to the status of several other cases. However, two of these cases did not relate to the fact, or conditions, of his current confinement. Plaintiff did not provide this court with sufficient information relating to the other

dismissed "because I did not have access to the rules of the court, and did not correct the petition for relief when the knowledge that I had missed service upon someone came up." Plaintiff's Affidavit in Support of Complaint at 2 (Dkt. # 43-2 , filed May 4, 2005). Defendant's counsel submits, under affidavit, copies of the material contained in the state court case file.

On February 8, 2005, the state court dismissed the petition, determining that Plaintiff had failed to comply with several state court procedural rules relating to service of the opposing party. However, it is clear that an alternate ground for the dismissal of Plaintiff's state court petition for writ of habeas corpus was that the state court found such a petition an improper vehicle to challenge Plaintiff's commitment order.[10]  *See* Attachment to Defendant's Memorandum in Support at 5-7 (Dkt. # 55-4, filed July 18, 2006). It is clear, therefore, that the Petition was dismissed because of its failure to state a claim, not because of any actions or inactions of Defendant.

Defendant's motion for summary judgment is **granted.**  Defendant's motion to strike is dismissed as moot.

---

purported actions for this court to know with any certainty whether Plaintiff may have suffered an actual injury as to these cases.

[10]Plaintiff seems to have been aware that this was the likely outcome of his Petition as early as August 11, 2004, when he filed his motion to amend his Petition for Writ of Habeas Corpus. In his proposed Amended Petition, Plaintiff asserts that "While the South Carolina Attorney General has been know[n] to object in other SVP Habeas Corpus petitions, on the grounds that it is not a proper Appeal of their Commitment . . . , the Courts have so far failed to explain what type of appeal is allowed under S.C. Code of Law 44-48-10 et seq." Attachment to Defendant's Memorandum in Support of Motion for Summary Judgment (Dkt. # 55-4, filed July 18, 2006).

6

**IT IS SO ORDERED**.

                                                s/ Cameron McGowan Currie
                                                CAMERON MCGOWAN CURRIE
                                                UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
March 14, 2007